William J. Katzberg v. Commissioner.
Katzberg v. Commissioner
Docket No. 111044.
United States Tax Court
1943 Tax Ct. Memo LEXIS 155; 2 T.C.M. (CCH) 618; T.C.M. (RIA) 43383; August 9, 1943
*155 Under the facts existing in the current tax year, held income of a trust is taxable to petitioner, the grantor-trustee. Herbert W. Bye, Esq., 111 W. Washington St., Chicago, Ill., for the petitioner. L. M. Ponder, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax for the calendar year 1939 in the amount of $1,568.18, and an overassessment for the year 1938. This proceeding, so far as it pertained to 1938, was dismissed for lack of jurisdiction. Thus, the taxable year in issue is 1939, and the only question is whether petitioner, as grantor, is taxable upon trust income under section 22 (a) of the Internal Revenue Code. One other issue raised by the pleadings has been settled by a stipulation that for 1939 petitioner is entitled to a loss deduction of $2,000 sustained in the operation of a farm. Findings of Fact Petitioner was born in 1879 and was married to Ida Schultz in 1899, with whom he has resided continuously since that date. In the taxable year and thereafter to the present time petitioner was a resident of Illinois. His return for 1939 was filed in the first district of Illinois. Prior *156 to December 1, 1938, petitioner was the owner of 6,226 of the outstanding 9,555 shares of common and preferred stock of the Chicago Steel Tank Company, an Illinois corporation. Each class of stock had voting power and therefore petitioner had voting control of the company. The company was an outgrowth of a partnership formed in 1899 and was incorporated in 1902. Petitioner was one of the organizers of the business and has devoted his entire business life to its operations. Since 1919 he has been president and treasurer of the company and one of its three directors. His salary from the company amounted to $16,000 in 1938 and increased in the following years to $18,000, $29,000 and $69,000, respectively, amounting to $65,000 in 1942. Petitioner's approximate financial worth on December 1, 1938 was $200,000.00, the principal item of which was his interest in the company. His other assets consisted of Government bonds, other securities and his interest in the residence in Illinois which was owned jointly by himself and his wife. On December 1, 1938 petitioner executed a trust agreement by the terms of which he transferred to himself as trustee 2,000 shares of common stock of the Chicago *157 Steel Tank Company. Article IIA of the debenture provided for the distribution of income and principal as follows: ARTICLE II. DISTRIBUTION OF INCOME AND PRINCIPAL A. The Trustee from and after the date hereof may, in his sole discretion, pay the net income from the trust estate, or any part thereof, to or for the benefit of IDA KATZBERG, wife of the Settlor, so long as she shall live. Any income not distributed at the end of any year shall be added to and become a part of subsequent income. The Trustee shall have the power at any time and from time to time to pay or transfer to or to expend in behalf of said IDA KATZBERG such sums from the principal of the trust estate as the Trustee in his sole and uncontrolled discretion shall deem necessary or desirable or advantageous for the support, comfort and welfare of said IDA KATZBERG, or for any other purpose, including the payment direct of any such sum of principal to said IDA KATZBERG; provided, however, that the Trustee shall not pay out of the principal of the trust estate any more than Three thousand dollars ($3,000) in any one year, the years in this connection to commence with the date of this trust agreement. Upon the *158 death of said IDA KATZBERG, in case the Settlor shall be living at that time, the Trustee shall from and after the death of said IDA KATZBERG pay all of the net income from the trust estate to GERMAN EVANGELICAL ORPHANAGE AND OLD PEOPLES HOME SOCIETY OF NORTHERN ILLINOIS, now located at Bensenville, Illinois, in such convenient installments as the Trustee in his sole and uncontrolled discretion shall deem advisable. Upon the death of the Settlor in case he shall survive said IDA KATZBERG, or in case the Settlor shall not survive said IDA KATZBERG then upon her death, the Trustee shall pay, deliver, distribute. convey and transfer to said GERMAN EVANGELICAL ORPHANAGE and OLD PEOPLES HOME SOCIETY OF NORTHERN ILLINOIS all of the trust estate, both principal and income, except any stock of the CHICAGO STEEL TANK COMPANY which may be in the trust estate at that time. The Trustee shall continue to hold any stock of the Chicago Steel Tank Company which shall be in the trust at that time until said Trustee in his sole and uncontrolled discretion shall dispose of the same, and when all of such stock is disposed of by the Trustee he shall then turn over to the GERMAN EVANGELICAL ORPHANAGE *159 AND OLD PEOPLES HOME SOCIETY OF NORTHERN ILLINOIS all of the remainder of the trust estate, both principal and accumulated income, and the trust hereby created and provided for shall thereupon terminate. Provided, however, that said Trustee shall not hold the stock of said Chicago Steel Tank Company more than ten (10) years after the death of the survivor of the Settlor and his said wife, IDA KATZBERG, but shall sell or otherwise dispose of such stock not later than ten (10) years after such date. The declaration of trust authorized the trustee to hold and manage the trust property, with power to sell any of such property and any reinvestment thereof for cash or credit, for such price or prices and upon such terms as he should see fit; to lease any real estate of the trust; to borrow money on mortgages or pledge for any purpose deemed advantageous to the estate; to exchange property; to vote corporate stock; to keep securities in his own name or the name of his nominee without disclosing any fiduciary relationship; to retain in his sole discretion any property constituting part of the trust corpus regardless of the risk therein or the proportion of the trust estate made up of such *160 property; and to invest and reinvest trust property with as wide a latitude as an individual would have if he were the absolute owner of the property. The trustee was excused of liability except for gross negligence or misconduct. Article IC is as follows: The Trustee in his sole discretion may purchase from the executor or other representative of the estate of the Settlor or the trustee or trustees under any other trust created by the Settlor, whether by Will, agreement, declaration of trust, or otherwise, any property constituting part of such estate, and may make loans to said representative or trustee or trustees, either secured or unsecured, and the Trustee may continue to hold such property and loans, or either, as part of the trust estate, regardless of the risk therein or whether any portion thereof shall at any time constitute a large portion of the trust estate. The trustee was authorized to estimate income for the year and make advances thereon, any excess advances to be repaid from income of the next year. The settlor reserved the right to deposit additional property with the trustee. Article 4E provides as follows: The Trustee may sell property to or buy property from *161 the trust estate upon disclosure of his interests therein to said IDA KATZBERG during her lifetime and upon her assent, and after her death then upon disclosure of his interest therein to said GERMAN EVANGELICAL ORPHANAGE AND OLD PEOPLES HOME SOCIETY OF NORTHERN ILLINOIS during its existence and upon its assent. It was expressly stated that the trust should not operate in any way to relieve petitioner of his legal or moral duty to support and maintain his wife, and petitioner expressly waived any right or power to revoke, alter or amend the trust. The trust instrument provided that upon the death, resignation, incapacity or inability to act of the original trustee, Herbert W. Bye, petitioner's close personal friend and attorney, and The Northern Trust Company should act as co-trustees, and that the Reverend S. A. Recht, the pastor of petitioner's church and petitioner's personal friend, should act as co-trustee in the place of Bye upon the latter's death, resignation, incapacity, or inability to act. The instrument provided that so long as Bye or Recht should be acting as co-trustee the corporate co-trustee should entrust to such individual trustee the management of the Chicago *162 Steel Tank Company in so far as the trust estate controls such management, "and shall entrust to such individual Trustee the handling of any and all questions' which may arise by reason of stock ownership in said corporation. In no event shall the corporate Trustee assume any responsibility in connection with the management of said corporation so long as either said Herbert W. Bye or Reverend S. A. Recht is acting as co-Trustee." To the present time the corpus of the trust has consisted only of the 2,000 shares of Chicago Steel Tank Company. A certificate for such shares was issued on December 1, 1938, in the name of William J. Katzberg, Trustee under Trust Agreement dated December 1, 1938. The income of the trust has consisted of dividends on such stock and a small amount of interest. The dividends amounted to $2,000 in 1938, $7,500 in each of the years 1939 and 1940, and $8,000 in 1941. On December 27, 1938, petitioner opened a bank account in his name as trustee through which all funds of the trust passed. The dividend of $2,000 in 1938 was deposited in the trust account by petitioner as trustee on December 27th, and on the same day he, as trustee, loaned $1,850 of this amount *163 back to the Chicago Steel Tank Company. The dividend of $7,500 in 1939 was deposited in the trust account by petitioner on December 21st of that year and on the same day petitioner, as trustee, loaned $7,500 back to the Chicago Steel Tank Company. On December 29, 1939 the company repaid $3,894.10 of the amount previously loaned to it out of the trust funds and this amount, $3,894.10 of the amount previously loaned to it out of the trust funds and this amount, $3,894.10, was deposited in the trust account and the following day was paid to discharge a mortgage on the home owned jointly by petitioner and his wife. By the end of 1939 petitioner's wife had received none of the trust income for her own individual use and the balance of the account in petitioner's name as trustee, after payment of $19 in income tax, was $131. At the end of 1939 the company was indebted to the trust in the amount of $5,455.90. Petitioner and the other principal stockholders of the company likewise loaned back to the company the bulk of the dividends received by them as individuals during these years. The company used such loans as working capital, paid interest thereon, and in addition borrowed other amounts *164 from a bank. During 1940 the company made repayments to the trust account of $3,605.90. Various amounts of income of the trust were distributed to or for the use of the wife during 1940, 1941 and 1942. On December 23, 1942 petitioner resigned as trustee, the 2,000 shares constituting the trust corpus were issued in the names of Bye and The Northern Trust Company as successor-trustees, and petitioner turned over to them $2,055.57, of which $205.57 represented the credit balance in the trust bank account and $1,850 represented repayment by the company of the balance of the loans made to it by the trust. Petitioner has at all times paid the household expenses and in addition has given his wife a weekly allowance for her personal use. Her allowance was $25 a week during 1938 and until April 1939 when it was increased to $50 a week. In September 1942 the allowance was increased to $60 a week, at which figure it remains at the present time. These allowances since December 1, 1938 have been in addition to any amounts received by his wife from the trust income. The wife has never been director or officer of the Chicago Steel Tank Company or engaged in any other business. The German Evangelical *165 Orphanage and Old Peoples Home Society of Northern Illinois is a corporation organized and operated exclusively for religious, charitable and educational purposes, no part of the net earnings of whicinures to the benefit of any private shareholder or individual, and no part of the activities of which is carrying on propaganda or otherwise attempting to influence legislation. Petitioner has been treasurer and a director of the Home since 1929 and has been interested in it from prior to 1926. He has made substantial contributions to the Home since 1926, amounting to approximately $1,000 per year for the five years preceding 1938 and between $1,500 and $2,000 per year since 1938. Petitioner has no living children and two nephews. One of the nephews is employed by the Chicago Steel Tank Company and the other is employed as manager of petitioner's farm. After execution of the trust indenture petitioner, during the tax year, retained the equivalent of full ownership of the stock transferred in trust. Opinion ARUNDELL, Judge: We think that in the tax year petitioner had such full power and control over the trust corpus and income as to render him liable to tax upon the trust income under *166 section 22 (a). This conclusion is reached upon a consideration of all the relevant factors, including the provisions of the trust indenture, many of which are of a nature not usually found in instruments of this character, the manner in which the trust estate was handled in the tax year, and circumstances attending to its creation. No one factor, of course, is controlling, and we think it will suffice here to state briefly the important facts which, in our opinion, justify our ultimate finding. We do not gather from the trust instrument a purpose primarily to benefit petitioner's wife or to require the exercise of a genuine discretion upon the part of petitioner in determining what should be distributed to her. Cf. Phipps v. Commissioner, 137 Fed. (2d) 141; Stuart v. Commissioner, 124 Fed. (2d) 772, affirmed on this point Helvering v. Stuart, 317 U.S. 154. Petitioner had the power, in his uncontrolled discretion, to make distribution to her or not. The power was not required to be exercised in any one year; undistributed income retained its character as income, capable of later distribution. *167 In addition, petitioner had the broader right to pay the income for his wife's benefit. The record is not clear whether the payment on the mortgage in the tax year was made directly by petitioner as trustee, or by the wife after distribution to her from the trust. As petitioner maintains, the payment undoubtedly benefited her, and consequently we suppose such a payment would have been proper if made by the trust itself. Certainly, no one would doubt that it also benefited the petitioner. There are countless other items which, strictly speaking, would benefit a wife and at the same time would be of benefit or satisfaction to the husband. The right in the husband to pick and choose among such items, or to give the money itself to the wife, or to withhold the gifts completely, certainly places the husband in a substantial position as owner of the income. True, he could not devote it to his own individual use, if the latter did not coincide with a benefit to the wife, but even this limitation appears to have been without much practical effect when we consider how the income was used in and prior to the tax year. Petitioner loaned it to the company of which he was president and controlling *168 stockholder. He did the same thing with the bulk of his individual dividends, and thus the creation of the trust cannot be said to have changed what he would otherwise have done with the income. The remainder of the trust is to go to charity; but here again we find petitioner in a very dominating position. In his sole and uncontrolled discretion he may withdraw from the corpus up to $3,000 in any one year "for the support, comfort and welfare of said IDA KATZBERG, or for any other purpose, including the payment direct of any such sum of principal to said IDA KATZBERG * * *." We do not know the value of the trust estate; it is conceivable the charity, by reason of this power reserved the petitioner, will receive nothing. Moreover, the particular shares held in trust during the tax year were not to go to the charity, but, if they had not been disposed of during petitioner's lifetime, were to be sold or otherwise disposed by the trustee and the proceeds given to charity. Possibly connected with this in some way, though the record does not elucidate, is the unusual provision authorizing the trustee to purchase from or make loans to petitioner's estate or any other trust created by him. *169 Looking at the provisions for charity in a realistic manner, we think they amounted in effect to a binding pledge by petitioner to pay the charity a certain amount upon the death of himself and his wife, the amount to be calculated by the value at that time of certain shares of stock. In the meantime he promised to set aside the shares that were to act as a measuring rod, using the income therefrom in a broad manner as hereinbefore described, with power to sell the shares, so long as he kept the proceeds segregated. But, if all did not go well with the family finances or for any other reason, he reserved the right to revoke his pledge to charity to the extent of $3,000 each year during his lifetime. A further power of control over the corpus lies in the unusual provisions that loans, secured or unsecured, might be made to any other trust created by petitioner, and such loans could be made "regardless of the risk therein." Viewing the entire situation as it appeared during the tax year, we are of opinion that respondent did not err in determining that for purposes of section 22(a) petitioner remained substantially the owner of the trust corpus and accordingly should be taxed upon *170 the trust income. Helvering v. Clifford, 309 U.S. 331; Helvering v. Horst, 311 U.S. 112; Commissioner v. Buck, 120 Fed. (2d) 775; Williamson v. Commissioner, 132 Fed. (2d) 489; David M. Heyman, 44 B.T.A. 1009. Our conclusion is limited to the facts as they existed in the tax year. We express no opinion with respect to the situation obtaining after petitioner resigned as trustee, nor are we called upon to consider the effect of the curtailment of petitioner's rights and powers in the event his wife should die. Viewed only with respect to the tax year before us, we think respondent's determination should be affirmed. Decision will be entered under Rule 50.